IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHEDAYAH TYLER, KADEJIAH TYLER, and JAMEELA TYLER obo MARCUS WHITE, JR. (deceased), | ) ) ) ) |
| Petitioners, | ) ) |
| vs. | ) ) |
| ALLEGHENY COUNTY and UNITED STATES, | ) ) ) | Civil Action No. 20-969
| Respondents, | ) ) |
| and | ) ) |
| ALLEGHENY COUNTY DISTRICT ATTORNEY and ALLEGHENY COUNTY DISTRICT ATTORNEY'S OFFICE | ) ) ) ) |
| Intervenor Respondents. | ) |

## MEMORANDUM OPINION

### I. PROCEDURAL HISTORY

Seven years ago, 15-month old Marcus White, Jr., ("Baby Marcus") was shot and killed in a case that remains unsolved. In June 2020, his mother, Jameela Tyler, along with Shedayah Tyler and Kadejiah Tyler, both of whom were critically injured in that shooting (collectively "Petitioners"), commenced this § 1983 action against Respondents Allegheny County (the "County") and the United States. In their Petition for Enforcement of Crime Victim's Rights ("Petition"), Petitioners claim violations of their rights under the Federal Crime Victims' Rights Act of 2004 ("FCVRA"), 18 U.S.C. § 3771 *et seq*, and the Pennsylvania Crime Victims Act ("PaCVA"), 18 P.S. § 11.101 *et seq*. According to Petitioners, the alleged violations of the FCVRA and the PaCVA also constitute deprivation of their constitutional rights under the Fourteenth Amendment. (*Id.*)

After the Petition was filed, the Allegheny County District Attorney (the "DA") and the Office of the District Attorney (the "DA's Office") sought and were granted leave to intervene in this lawsuit. Thereafter, all Respondents moved to dismiss the Petition. (ECF Nos. 10, 16, 33.) These motions have been fully briefed (ECF Nos. 11, 17, 19, 21, 22, 31) and oral argument was held on December 3, 2020. Accordingly, Respondents' motions are ripe for disposition.[1]

## II.    FACTUAL BACKGROUND

Two years after the murder of Baby Marcus, another shooting occurred at a local vigil (the "2015 Shooting"). (Petition ¶ 36.) One of the suspects arrested in that shooting was Gregory Parker ("Parker"). (*Id.* ¶ 40.) Charges against all of the suspects in the 2015 Shooting were ultimately dropped (*id.* ¶ 41), but Parker was later identified as a witness during the investigation and prosecution of another shooting that took place in 2016 (the "2016 Massacre"). (*Id.* ¶ 40.) In addition to local law enforcement and the DA, the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") was also involved in investigating the 2015 Shooting, the 2016 Massacre, and "other potential subsequent criminal investigations . . ." (*Id.*)

Petitioners allege that a series of prosecutorial errors by the DA in the 2016 Massacre case resulted in the acquittal of the individuals who had been charged. (*See id.* ¶¶ 46–49, 55–58.) At pre-trial hearings in that case, it became evident that Parker possessed information related to the murder of Baby Marcus. (*Id.* ¶ 49.) According to Petitioners, the DA and the ATF had questioned Parker (*see id.* ¶ 56), and the DA's Office "created an implied agreement to not use the statements

---

[1] Under the Federal Magistrate Judges Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Consent of all parties to a case gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003). All parties consented to the magistrate judge's jurisdiction. (ECF Nos. 27, 28, 29.)

2

[Parker] made regarding his involvement in the Baby Marcus murder in exchange for his cooperation in the [2016] Massacre trial and the [2015] Shooting cases." (*Id.* ¶ 57.)

As alleged in the Petition, "[w]hile it is unclear whether [Parker] was the actor who actually killed Baby Marcus, it is clear that [he] possessed enough information . . . to provide all of the Respondents in this matter with probable cause to execute arrest warrants, question suspects, and to prosecute the murder of Baby Marcus." (*Id.* ¶ 53.) Additionally, despite possessing this information "throughout the pendency of the [2016] Massacre investigation and trial," (*id.* ¶ 50), Respondents failed to provide Petitioners with any information regarding the investigation of the Baby Marcus murder or discuss their decision to not investigate and/or prosecute the individuals involved in that crime. (*Id.* ¶ 54.) Thus, Petitioners claim, Respondents "have failed to adhere to the FCVRA and PaCVA numerous times throughout the last seven (7) years dating back to the murder of Baby Marcus . . ." (*Id.* ¶ 51.)

Parker was eventually arrested as a suspect in the murder of Baby Marcus in June 2020. (*Id.* ¶ 40.) Petitioners contend, however, that they do not trust the DA's Office to conduct a thorough investigation and prosecution of the Baby Marcus murder given its previous involvement with Parker and Respondents' alleged failures "to protect the Constitutional rights provided to Petitioners by both the FCVRA and PaCVA." (*id.* ¶¶ 60, 62) Thus, Petitioners ask the Court to compel Respondents to "comply with the provisions of the FCVRA and PaCVA," order the "reopening of the investigation related to all potential suspects of the Baby Marcus shooting," and reassign the investigation and prosecution to the United States or Pennsylvania Attorney General's office. (*Id.* ¶ 60; *see also id.* at 15, 17.)

**III.     STANDARD OF REVIEW**

Relying upon Federal Rule of Civil Procedure 12(b)(1), Respondents seek dismissal of the Petition based on lack of subject-matter jurisdiction. Further, in reliance on Rule 12(b)(6), they assert that the Petition fails to state a claim upon which relief can be granted.

A. Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject-matter jurisdiction of the court to address the merits of plaintiff's suit. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The first step in analyzing a jurisdictional challenge under a Rule 12(b)(1) motion to dismiss is to determine whether the "motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (quoting *In re Schering Plough*, 678 F.3d at 243). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "But a factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* (citing *Constitution Party of Pa.*, 757 F.3d at 358).

4

If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is, "by definition, a facial attack." *Constitution Party of Pa.*, 757 F.3d at 358 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977)). When analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough*, 678 F.3d at 243 (quoting *Gould Elecs. Inc., v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

B. Rule 12(b)(6)

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### IV. DISCUSSION

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives a person of rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Therefore, a § 1983 plaintiff "must establish that []he was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d

626, 646 (3d Cir. 2009). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Petitioners base their § 1983 claims on alleged violations of the FCVRA, which "guarantees to the victims of federal crimes an array of substantive and participatory rights," *United States v. C.S.*, 968 F.3d 237, 248–49 (3d Cir. 2020). This includes notice of and participation in court proceedings, the right to confer with government counsel and the right to be informed of a deferred prosecution agreement. 18 U.S.C. § 3771(a); *see In re Ippolito*, 811 F. App'x 795, 797 (3d Cir. 2020). Petitioners claim that Respondents have violated the FCVRA and the PaCVA by (1) failing to inform them of Parker's involvement in the murder of Baby Marcus; (2) entering into a non-prosecution/immunity agreement with Parker without seeking their input; and (3) failing to prosecute Parker or other suspects for the murder of Baby Marcus. According to Petitioners, Respondents have "denied their Constitutional rights in that they have received no consultation from the detectives, prosecutors, and agents of the government regarding the possible disposition of charges, and no notice of their rights under the FCVRA and PaCVA as required by law." (Petition ¶ 66.) They further allege that by failing to protect their "Constitutional Rights under the FCVRA and the PaCVA," (*id.* ¶ 72), Respondents have inflicted "an injury to their human dignity" (*id.* ¶ 71) and, therefore, have violated their Fourteenth Amendment rights. (*Id.* ¶ 72.)

As explained below, the Court lacks subject-matter jurisdiction to hear Petitioners' claims against United States. Further, the Petition fails to state a claim under § 1983 against any of the Respondents.

A. <u>Claims Asserted Against the United States</u>

1. The Court lacks jurisdiction to hear the claims against United States

In seeking dismissal of Petitioners' claims against it, the United States contends that the Court is without subject-matter jurisdiction to adjudicate these claims because neither United States nor its agencies, including the ATF, are proper parties to § 1983 actions.[2] In their response in opposition, Petitioners focus on whether § 1983 is a proper vehicle for the enforcement of their rights under the FCVRA. (ECF No. 19 at 1–6.) What they failed to address, however, is the threshold inquiry of whether the Court has subject-matter jurisdiction to address their claims.

Although "[s]ection 1983 grants individuals 'access to a federal forum for claims of unconstitutional treatment at the hands of state officials,'" *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 99 (3d Cir. 2011) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)), "[i]s well established that liability under § 1983 will not attach for actions taken under color of federal law." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) (citing *Bethea v. Reid*, 445 F.2d 1163, 1164 (3d Cir.1971)). The Third Circuit has explained that "[t]he United States and other governmental entities are not persons within the meaning of Section 1983." *Polsky v. United States*, 844 F.3d 170, 173 (3d Cir. 2016) (quoting *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970)).

Simply put, the United States and its agencies are not persons within the meaning of § 1983 and cannot be sued under that statute.

---

[2] Challenges to the Court's subject-matter jurisdiction are analyzed under Fed. R. Civ. P. 12(b)(1). Because the United States levies a facial attack on the Petition, the Court will apply the Rule 12(b)(6) standard of review by considering the allegations of the Petition as true and construing them in the light most favorable to Petitioners.

8

In an effort to address this deficiency, Petitioners propose amending their Petition to name the individual ATF agent who was involved in questioning Parker "as a co-conspirator to deprive Petitioners of their rights guaranteed under the FCVRA and the [PaCVA]." (ECF No. 19 at 6.) In support of this concept, Petitioners reference the following additional facts in their brief:

- ATF Agent Neil Carmen ("Carmen") was intimately involved in the use and handling of Parker as a Federal and/or state cooperating witness (*id.*);
- Carmen had at least seven meetings with Parker beginning in January 2017 which suggest that he was deeply involved in working with the County Respondents (*id.*);
- The federal government brought federal charges against another individual after he was unsuccessfully prosecuted in state court (*id.* at 7 n.2); and
- Carmen was either present or involved in Parker's confession and immunity deal related to the Baby Marcus shooting. (*Id.* at 9.)

Petitioner's proposed amendment misses the mark for several reasons, however. While it is true that "federal employees who conspire with state officials to violate someone's constitutional rights are treated as acting under color of state law," *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990), neither the allegations of the Petition nor the additional factual allegations suggested by Petitioners in their brief state a claim for conspiracy.

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). As the County Respondents point out, the fact that both the County and the United States were involved in an investigation of a crime or crimes does not establish the elements of a conspiracy. In fact, such investigations are part of their law enforcement duties. Moreover, a decision to defer prosecution of state charges against Parker would have been made by the DA, not Agent Carmen, and Petitioners do not allege that Carmen possessed the necessary authority to defer prosecution of a suspect, or that Parker committed a federal crime.

Petitioners suggest that a likely explanation for Agent Carmen's involvement was the "significant 'overlap' between state and Federal criminal investigations to the point that a pattern has emerged where the Federal government will pick up cases against criminal defendants against whom [the] County fails to secure convictions." (ECF No. 19 at 7 n.2.) However, the fact that the federal charges were brought against another suspect after he was unsuccessfully prosecuted in state court does not suggest that the federal government intended to bring charges against Parker. Moreover, this is not a circumstance where the state failed to secure a conviction. In fact, Parker has now been charged.

Thus, even if all the facts in the Petition, and those proposed to be added, are assumed to be true, the fact that Agent Carmen was working with the County and the DA or was either present or involved in Parker's confession and immunity deal does not suggest, let alone support, a claim that he was conspiring with them to violate Petitioners' rights under the FCVRA. *See White v. Hinds*, 675 F. App'x 186, 188 (3d Cir. 2017) (Perceiving no error in the district court's decision to deny leave to amend where plaintiff "did not allege facts sufficient to support a civil conspiracy claim, instead making conclusory statements without alleging any facts to show the existence of an agreement between the parties . . .").[3]

More importantly, as discussed below, because Petitioners have failed to state a § 1983 claim against the County Respondents, Agent Carmen could not have conspired with them to violate Petitioners' constitutional rights. Absent an underlying cause of action for a particular act,

---

[3] Moreover, to the extent that Petitioners were to assert that a claim can be brought against Agent Carmen under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), claims against federal agents in their official capacities are deemed to have been brought against the United States and are barred by sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, to the extent that a claim against Carmen in his official capacity is construed as a claim under *Bivens*, it would be barred.

a claim for conspiracy fails as a matter of law. *See McKeeman v. Corestates Bank, N.A.*, 751 A. 2d 655, 660 (Pa. Super. 2000). Therefore, Petitioners' proposed amendment to add Agent Carmen as a defendant would be futile.

        2.    Alternatively, the Petition Fails to State a Claim against the United States

Petitioners assert two claims against the United States: violation of the FCVRA, and a violation of their Fourteenth Amendment rights. The United States contends that even if subject matter jurisdiction did exist, these claims fail as a matter of law.

With respect to the FCVRA cause of action, this statute does not authorize a separate cause of action; rather, a crime victim is entitled assert his rights solely by motion.[4] *See* 18 U.S. C. § 3771(d)(6). The FCVRA explicitly excludes a claim for damages and cannot be used to compel the United States to prosecute an individual. *Id. See also, e.g., In re Womack*, 609 F. App'x 59, 60 (3d Cir. 2015); *United States v. Nix*, 256 F. Supp. 272, 278-79 (W.D. N.Y. 2017).

While Petitioners argue that they have rights under the FCVRA that accrue before criminal proceedings have commenced, they cite to no binding precedent or Third Circuit decisions that support their assertion under the facts of this case. Indeed, Petitioners have not alleged that they were victims of a *federal* crime. The FCVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C § 3771(e)(2)(A). As Petitioners do not allege that the murder of Baby Marcus was a federal offense, there is no basis to conclude that they are crime victims under the

---

[4] As the United States notes in its Reply Brief, contrary to Petitioners' suggestion that the FCVRA is just a collection of "empty words," victims of federal crimes clearly have a mechanism for enforcement of their rights because the statute expressly states that they may file a motion for relief. (ECF No. 21 at 4 n.5.)

FCVRA.[5] Further, it is undisputed that Parker has been charged in state court and that matter is pending. Thus, Petitioners have the means to protect their rights as crime victims in the state prosecution pursuant to the PaCVA.

Petitioners have also asserted a Fourteenth Amendment claim against the United States. They allege that the violation of their Constitutional rights under the FCVRA interfere with Petitioners' rights under the Fourteenth Amendment.

As an initial matter, as the United States asserts, the Fourteenth Amendment does not apply to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (noting that the Fourteenth Amendment applies only to the states). Even if it did, however, Petitioners have failed to state a claim against it. First, as previously discussed, Petitioners' claim against the United States under the FCVRA fails to state a claim on which relief may be granted. Moreover, the Petition fails to identify any equal protection or due process rights under the Fourteenth Amendment that were allegedly violated. If Petitioners' Fourteenth Amendment due process claim is premised on the failure to conduct a proper investigation or initiate a prosecution related to the Baby Marcus shooting, "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (citations omitted).

---

[5] Petitioners acknowledge that they "don't know what the United States and/or [the] County [Respondents were] . . . contemplating as it relates to . . . Parker and the potential charges against him." (ECF No. 22 at 12.) Nonetheless, they insist that the case should be allowed to proceed to discovery because they "cannot answer those questions at th[e] pleading stage of the litigation." (*Id.*) Thus, Petitioners concede that, at this juncture, it is uncertain whether they are "crime victims" under the FCVRA but, based on the ATF's involvement in the investigation, contend that there must be some federal charges against Parker related to the Baby Marcus murder that were at least being considered. (*See id.*) At the same time, Petitioners admit that United States has a working relationship with the County Respondents through joint task forces that share information and resources. (*Id.* at 2 n.1.) This admission undercuts their argument that the ATF's involvement suggests the commission of a federal offense in relation to the Baby Marcus murder. Besides, there is nothing in the FCVRA that affords "potential" crime victims the right to conduct discovery in order to ascertain whether they are indeed "crime victims" under the FCVRA.

In their response to United States' motion to dismiss, Petitioners assert that the Respondents "deprived [them] of their right to human dignity pursuant to the Fourteenth Amendment," by "not disclosing to [them] the identity of the man responsible for the murder of Baby Marcus." (ECF No. 19 at 10.) To the extent Petitioners contend that their Fourteenth Amendment right to human dignity was violated, however, the human dignity "thread of Fourteenth Amendment jurisprudence exists, but it does so principally in coerced custodial or penal settings." *Dorley v. South Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 230 (W.D. Pa. 2015). That simply is not the case here.

Therefore, because Petitioners have failed to state a claim against the United States for violation of the FCVRA or their Fourteenth Amendment rights, their claims against the United States will be dismissed.

        B.    <u>The Petition fails to state a viable claim against the County Respondents</u>

The County Respondents seek dismissal on the several grounds. Among other things, they contend that (1) the FCVRA does not apply to them; (2) Section 1983 does not provide redress for violations of a state statute such as the PaCVA; and (3) Petitioners have failed to allege a Fourteenth Amendment violation.

        1.    The FCVRA does not apply to the County Respondents

The FCVRA provides in relevant part that "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in [this statute]." 18 U.S.C. § 3371(c)(1). By its express terms, the FCVRA does not apply to the County Respondents because they are not employees, officers or agencies of the United States. Thus, they have no duties under the FCVRA,

including ensuring that crime victims are accorded their rights under the statute. Moreover, the FCVRA defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C § 3771(e)(2)(A). As previously discussed, the existence of a federal crime has not been alleged, and as such, there is no basis to conclude that Petitioners are crime victims under the FCVRA.

Petitioners attempt to argue that the County Respondents are implicated because the FCVRA "applies to 'other departments and agencies of the United States.'" (ECF No. 22 at 10–11 (quoting 18 U.S.C. §3371(c)(1)).) They suggest that this provision should be read to encompass "any law enforcement within the United States that is working with agencies of the United States." (*Id.* at 11.)

As explained by the Third Circuit, "[t]he starting point of all statutory construction is the text of the statute" absent any ambiguity. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 611 (3d Cir. 2015). If, as suggested by Petitioners, the FCVRA was intended to apply to any law enforcement agency or personnel within the United States as long it is working with agencies of the United States, Congress should have been "'reasonably explicit' about it." *Bond v. United States*, 572 U.S. 844, 858 (2014) (quoting *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 544 (1994)). This is the case because "[i]n our federal system, the National Government possesses only limited powers; the States and the people retain the remainder." *Id.* at 854. Therefore, "'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides' the 'usual constitutional balance of federal and state powers.'" *Id.* at 858 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).

The expansive construction suggested by Petitioners simply is not supported by its plain and unambiguous language of the FCVRA. By its express terms, the statute limits its application

14

to "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime . . . ." 18 U.S.C. § 3371(c)(1). The County Respondents are not federal agencies, officers, or employees.

While not alleged in the Petition, Petitioners now assert that United States Department of Justice's website reveals that there are currently at least nine joint task forces between United States and the County Respondents that share information and resources. (ECF No. 22 at 2 n.1.) According to Petitioners, it is premature to dismiss this matter at the pleading stage because discovery "may" reveal that the County Respondents are required to follow federal laws, such as the FCVRA, in exchange for acceptance of federal grants and resources. (*Id.*) In response, however, the County Respondents note that the terms and conditions of any such grants are matters of public record under the Pennsylvania Right to Know Act, 65 P.S. §§ 67.101–67.3104, and no such conditions exist. (ECF No. 31 at 5.) Having determined that the FCVRA, by its express terms, does not apply to the County Respondents, it is both inappropriate and unnecessary to allow this case to proceed to discovery as Petitioners suggest.

As Petitioners' argument that the FCVRA applies to the County Respondents is unavailing, their FCVRA claim against the County Respondents necessarily fails. Thus, Petitioners have failed to state a FCVRA claim against the County Respondents.

2. Section 1983 does not provide redress for violations of state law

Petitioners have also asserted a § 1983 claim against the County Respondents under the PaCVA. However, § 1983 "provides a remedy for violations of federal, not state or local, law." *McMullen*, 643 F.3d at 99. Accordingly, their reliance on the PaCVA in advancing their § 1983 claim is misplaced.

15

Petitioners contend that because "[t]he efforts undertaken by [them] in filing their §1983 Petition pursuant to both the FCVRA and PaCVA is a matter of first impression" in the Third Circuit, the Court should analyze their claim under the Pennsylvania Constitution. (ECF No. 22 at 19.) However, Petitioners have premised the Court's subject-matter jurisdiction in this matter solely upon 28 U.S.C. § 1331. Therefore, the Court may exercise jurisdiction over only those claims in the Petition that "arise under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because neither the PaCVA nor the Pennsylvania Constitution, "arise under the Constitution, laws, or treaties of the United States," *id.*, the Court lacks subject-matter jurisdiction to hear this claim.[6]

Petitioners' Section 1983 claim based on alleged violations of the PaCVA will be dismissed with prejudice. This dismissal is without prejudice regarding any state law claims Petitioners may have under the Pennsylvania Crime Victims Act.

### 3. Petitioners have failed to state a Fourteenth Amendment claim

Petitioners allege that by failing to protect their constitutional rights under the FCVRA and the PaCVA, the County Respondents interfered with their rights under the Fourteenth Amendment. (Petition ¶¶ 71, 72.) As explained above, Petitioners' FCVRA claim fails because FCVRA does not apply to the County Respondents, and the Court lacks subject-matter jurisdiction to hear Petitioners' claim based on the alleged violations of the PaCVA. Therefore, their Fourteenth Amendment claim, which is premised on the alleged violations of those statutes, necessarily fails.

In their brief in opposition, Petitioners did not address the arguments of the County Defendants with respect to their Fourteenth Amendment claim. (ECF No. 22.) As noted above,

---

[6] An amendment of the Petition in order to assert this claim under 28 U.S.C. § 1367 would be futile as the Court is dismissing all claims over which it has original jurisdiction.

Petitioners do argue in their response to United States' motion to dismiss that all of the Respondents "deprived [them] of their right to human dignity pursuant to the Fourteenth Amendment," by "not disclosing to [them] the identity of the man responsible for the murder of Baby Marcus." (ECF No. 19 at 10.) For the same reasons discussed regarding the claim against the United States, Petitioners' Fourteenth Amendment claim against the County Respondents fails as a matter of law and therefore, will be dismissed for failure to state a claim under Rule 12(b)(6).

      C.    <u>Leave to Amend</u>

When dismissing a civil rights case for failure to state a claim, a court must give the plaintiff the opportunity to amend a deficient complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors,* Inc., 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted).

Here, amendment would be futile. As it relates to the United States, their claims could not be successfully amended for the reasons discussed: (1) the Court lacks jurisdiction to address § 1983 claims against the United States; and (2) the Fourteenth Amendment does not apply to the federal government. Moreover, even if these hurdles could be overcome, a curative amendment as to the FCVRA would be futile because Petitioners are not victims of a federal crime nor do they have a private cause of action under the FCVRA. As there is no constitutional right to the investigation or prosecution of another, and the right to human dignity is not implicated by the facts of this case, amendment of a claim under the Fourteenth Amendment would be equally unavailing.

The same is true regarding Petitioners' claims against the County Respondents. The FCVRA, by its express terms, does not apply to them. Similarly, the County Respondents' failure to disclose the identity of Parker to Petitioners or properly investigate and prosecute Baby Marcus' murder is insufficient to implicate a due process right and cannot be cured. Finally, the Court declines to exercise supplemental jurisdiction over any state law claims Petitioners may have under the Pennsylvania Crime Victims Act given the dismissal of all claims over which it has original jurisdiction.

### V. CONCLUSION

Based on the foregoing, Respondents' motions to dismiss will be granted. Appropriate orders will follow.

Dated March 30, 2021                    BY THE COURT:


                                        s/ Patricia L Dodge
                                        PATRICIA L. DODGE
                                        United States Magistrate Judge